UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY GARCIA,

                            Plaintiff,

            -against-

WALMART INC.,

                           Defendant.

25-CV-2631 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

*Pro se* Plaintiff Gary Garcia sues his employer Defendant Walmart Inc. ("Walmart"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C. §§ 2000e, *et seq.*, alleging discrimination on the basis of national origin. Plaintiff alleges that Walmart wrongfully terminated him for seven weeks after it failed to verify his I-9 Form and confirm his legal authorization to work in the United States. Walmart moves to dismiss Plaintiff's complaint for failure to state a claim. For the reasons stated herein, the Court grants Defendant's Motion to Dismiss and grants Plaintiff leave to amend his complaint.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the Complaint and presumed to be true for the purposes of the instant motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). Additionally, certain facts are taken from Plaintiff's opposition to the motion to dismiss. *See Johnson v. Rockland Cnty. BOCES*, No. 21-CV-3375 (KMK), 2022 WL 4538452, at *1 n.3 (S.D.N.Y. Sept. 28, 2022) (stating that the "mandate to read the papers of pro se litigants generously makes it appropriate to consider [a] plaintiff's additional materials, such as his opposition memorandum" in considering a motion to dismiss (quoting *Gadson v. Goord*, No. 96-CV-7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997))).

On August 15, 2021, Defendant Walmart hired Plaintiff Gary Garcia for a position located in Monticello, New York. ECF No. 1 at 5 ("Compl."). Walmart had previously employed Plaintiff once before. *Id.* At the time of his August 15, 2021 hiring, Plaintiff completed his I-9 paperwork. *Id.* A couple days later, Walmart's "People Lead" Marilyn Smith informed Plaintiff that his I-9 Form had received a "tentative nonconfirmation" designation,[1] and that Plaintiff needed to contact Homeland Security and/or the Social Security Administration ("SSA"). *Id.* Subsequently, Plaintiff contacted the SSA, which confirmed on multiple occasions that the information provided on his I-9 Form was correct. *Id.*

Plaintiff alleges that throughout the next two years and eleven months, Defendant continuously accused Plaintiff of lying about having confirmed his I-9 status, and threatened Plaintiff with termination. *Id.* at 5–6. Additionally, multiple of Defendant's managers asked Plaintiff whether he was born in the United States of America and if he had a Social Security number. *Id.* at 6.

On July 20, 2024, Smith contacted Plaintiff to inform him that his I-9 paperwork again returned with a "nonconfirmation" status, and that Plaintiff had ten days to either correct this or be terminated. *Id.* Smith also informed Plaintiff that his continued employment without verified

---

[1]     E–Verify is an internet-based system that allows an employer to verify an employee's work-authorization status. An employer submits a request to the E–Verify system based on information that the employee provides similar to that used in the I–9 process. In response to that request, the employer receives either a confirmation or a tentative nonconfirmation of the employee's authorization to work. An employee may challenge a nonconfirmation report. If the employee does not do so, or if his challenge is unsuccessful, his employment must be terminated or the Federal Government must be informed.

*Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 590 (2011) (internal citations and quotation marks omitted).

employment eligibility subjected Walmart to fines. *Id.* at 6–7. Subsequently, on July 23, 2024, Plaintiff visited the SSA offices in Monticello, New York. *Id.* at 7.

On July 26, 2024, Plaintiff informed Smith that he visited the SSA and that an SSA representative confirmed that the information on Plaintiff's I-9 was correct. *Id.* In response, Smith terminated Plaintiff, although she stated that Plaintiff was "rehireable." *Id.* While his termination processed, Plaintiff called the Department of Justice's E-Verify program. *Id.* The E-Verify program informed Plaintiff that Smith failed to follow proper procedure in verifying Plaintiff's documents. *Id.*

Plaintiff then contacted Defendant's "associate relations" to report his "unjust" termination. *Id.* at 8. Plaintiff's associate relations case manager informed him that she had completed her investigation and that Plaintiff's store would soon contact him to reinstate him and discuss back pay. *Id.*

Seven weeks after his termination, Defendant reinstated Plaintiff in his position. *Id.* at 8. However, Plaintiff's store and marketing management informed Plaintiff that he was not owed back pay for the seven weeks that Plaintiff was terminated. *Id.* First, Plaintiff's store manager referred to the seven weeks as like an "unpaid vacation," which Plaintiff found offensive. *Id.* Further, a marketing manager told Plaintiff that Plaintiff was at fault for the termination, due to his failure to "tak[e] care of it with [the] SSA." *Id.* However, a different marketing manager told Plaintiff that though he would not receive back pay, the termination was not his fault. *Id.* at 8–9.

Following his reinstatement with Walmart, Plaintiff confirmed, after providing his Social Security card, birth certificate, and other identification, that his E-Verify status "show[s] a green checkmark." *Id.* at 9. Furthermore, Plaintiff has requested, but has not been provided, his "reinstatement document" from Walmart. *Id.*

3

On February 5, 2025, the United States Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Notice of Right to Sue. ECF No. 1-1. Thereafter, Plaintiff timely filed this lawsuit on March 31, 2025. Compl. Plaintiff brings his sole claim under Title VII, seeking compensatory damages of seven weeks' (224 hours) worth of back pay, as well as damages for emotional distress, punitive damages, and court costs and fees. *Id.* at 2, 6, 8; ECF No. 11 at 2. On May 1, 2025, Walmart filed its motion to dismiss. ECF No. 8; ECF No 9 ("Mot"). On May 13, 2025, under seal, Plaintiff opposed Walmart's motion. ECF No. 11. However, Plaintiff did not file a motion to seal nor obtain leave from the Court to seal. Defendant did not file a reply to Plaintiff's opposition.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). "When deciding a Rule 12(b)(6) motion, a district court may consider, in addition to the factual allegations in the complaint, 'documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.'" *Gagliardi v. Prager Metis CPAs LLC*, 738 F. Supp. 3d 469, 484 (S.D.N.Y. 2024) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining

4

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

*Pro se* complaints "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal citation omitted). "Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (internal citation omitted); *see also Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Because Plaintiff is proceeding *pro se*, the Court must liberally construe his Complaint and interpret it "to raise the strongest claims that it suggests." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal citation omitted). "Nevertheless, dismissal of a *pro se* complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations." *Blue v. City of New York*, No. 16-CV-9990 (VSB), 2018 WL 2561023, at *4 (S.D.N.Y. June 4, 2018) (citing *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

## DISCUSSION

The Court first dismisses Plaintiff's Title VII employment discrimination claim, because Plaintiff failed to allege that he was a member of a protected class or that the circumstance of his termination gives rise to an inference of discrimination. However, the Court grants Plaintiff leave

to amend his complaint. Finally, the Court files a redacted version of Plaintiff's sealed opposition.

## I.      Plaintiff Fails to Allege a Title VII Claim

Plaintiff fails to allege a discrimination claim under Title VII. Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "An employment decision . . . violates Title VII when it is 'based in whole or in part on discrimination.'" *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (quoting *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).

Discrimination claims under Title VII are analyzed under the three-part burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–803 (1973). Under this framework, a plaintiff must first establish a prima facie case of discrimination, then "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's action against the employee. If the employer does so, then the burden shifts back to the employee to show that the employer's articulated reason is pretext for discrimination." *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 86–87 (2d Cir. 2022) (cleaned up).

However, on a motion to dismiss, "the Court need only concern itself with the first phase of the *McDonnell Douglas* framework*." Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 449 (S.D.N.Y. 2023) ("A plaintiff need not make out a prima facie case at the pleading stage, and may withstand a motion to dismiss by providing a short and plain statement of the claim." (cleaned up)). "[T]he pleading requirements in discrimination cases are very lenient, even *de minimis*," but the allegations in a plaintiff's complaint must give plausible

support to the prima facie claim requirements. *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998)); *see also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510–512, 515 (2002). Therefore, the Court need not determine on the instant motion whether Defendants have any legitimate non-discriminatory reasons for their actions. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82–83, 89 (2d Cir. 2015) ("[C]ompeting explanations [for a defendant's employment decisions] are better evaluated at the summary judgment stage or beyond.").

To state a prima facie case of discrimination, Plaintiff must demonstrate that "(1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Kirkland-Hudson*, 665 F. Supp. 3d at 449 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). Here, Plaintiff fails to establish that he is a member of a protected class and that the circumstances give rise to an inference of discrimination.

First, Plaintiff fails to establish that he is a member of a protected class. In his opposition, Plaintiff argues that Defendant discriminated against him because of his national origin. ECF No. 11 at 1. However, Plaintiff fails to specify his national origin. Even construing Plaintiff's pleadings liberally, there is no indication of Plaintiff's national origin, race, or other protected characteristic. This alone is fatal to Plaintiff's claim.

Second, the Court finds, at this juncture, that Plaintiff satisfies the second element that he is qualified for his position. "Under the second element, to be qualified a plaintiff must show that he meets the employer's legitimate expectations based on its criteria for the position at the time the employer terminated him." *Khan v. Bank of Am., N.A.*, 572 F. Supp. 2d 278, 291 (N.D.N.Y. 2008), *aff'd*, 372 F. App'x 216 (2d Cir. 2010). "A court may rely on supervisor evaluations as

7

evidence of whether an employee met the employer's legitimate expectations." *Id.* Here, Plaintiff makes no allegations regarding his qualifications or that he was performing his duties satisfactorily. However, Defendant does not contest Plaintiff's qualifications, and the Court infers from Defendant's decision to rehire Plaintiff after verifying his employee eligibility that Plaintiff is qualified for his position and performs his duties satisfactorily. *See* ECF No. 9; Compl. at 8. Therefore, the second element is satisfied.

Third, Plaintiff has alleged that he suffered an adverse employment action. "An adverse employment action is 'a materially adverse change in the terms and conditions of employment.'" *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (internal citation omitted). "[S]uspension and termination certainly constitute 'adverse employment actions.'" *Witek v. City of New York*, 807 F. App'x 52, 54 (2d Cir. 2020). Here, Plaintiff alleges that Defendant terminated him for seven weeks. Compl. at 8. Defendant does not contest that this seven-week termination constitutes an adverse employment action under Title VII. Therefore, the third element is satisfied.

Finally, Plaintiff fails to allege circumstances giving rise to an inference of discrimination. Determining "whether the circumstances 'give rise to an inference' of discrimination, [requires] a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 38 (2d Cir. 1994). Inference of discrimination "is a 'flexible [standard] that can be satisfied differently in differing factual scenarios.'" *Howard v. MTA Metro–N. Commuter R.R.*, 866 F. Supp. 2d 196, 204 (S.D.N.Y. 2011) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)).

Direct evidence, such as verbal comments expressing a discriminatory animus by individuals involved in making the adverse employment decision, gives rise to an inference of discrimination. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (stating that an inference of discrimination can be drawn from "the employer's criticism of the plaintiff's performance in ethnically degrading terms or its invidious comments about others in the employee's protected group") (internal citation omitted))*; see also Anderson v. Hertz Corp.*, 507 F. Supp. 2d 320, 328 (S.D.N.Y. 2007), *aff'd*, 303 F. App'x 946 (2d Cir. 2008) ("[V]arious courts within this district have held that verbal comments made by individuals not involved in making the adverse employment decision cannot themselves give rise to an inference of [] discrimination."). Additionally, "[a] showing of disparate treatment—that is, a showing that an employer treated [the] plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for the purpose of making out a *prima facie* case." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks and citation omitted).

Here, Plaintiff does not allege any expressions of discriminatory animus or a showing of disparate treatment. First, Plaintiff argues that multiple of Defendant's managers asked him "discriminatory questions," including whether Plaintiff was born in the United States and if Plaintiff has a Social Security card and number. ECF No. 11 at 1; Compl. at 6.

Walmart argues that these questions allege "discrimination based on [Plaintiff's] citizenship status," and correctly points out that Title VII does not "make[] it illegal to discriminate on the basis of citizenship or alienage." *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S.

86, 95 (1973).[2] However, the Supreme Court stated that "there may be many situations where discrimination on the basis of citizenship would have the effect of discriminating on the basis of national origin," including when "a citizenship requirement might be but one part of a wider scheme of unlawful national-origin discrimination" or when an employer "use[s] a citizenship test as a pretext to disguise what is in fact national-origin discrimination." *Id.* at 92. However, here, there are no allegations in the complaint or in Plaintiff's submissions that give rise to a plausible inference that Defendant was using citizenship as a pretext for national origin discrimination or that these questions were pretextual.

Additionally, Plaintiff argues that Smith "made her decision to terminate [him] assuming that [he] wasn't authorized or legal to work in the United States." ECF No. 11 at 2. However, other than this conclusory statement, Plaintiff does not allege any facts suggesting that Smith, or any other decisionmaker representing Defendant, held discriminatory animus against Plaintiff based on his national origin or other protected characteristic. *See Gue v. Sulieman*, No. 10-CV-8958 (RLE), 2012 WL 4473283, at *8 (S.D.N.Y. Sept. 27, 2012) (holding that a plaintiff's "mere subjective belief that he was discriminated against because of his [membership in a protected class] does not sustain" a discrimination claim (quoting *Baptiste v. Cushman & Wakefield*, No. 03-CV-2012 (RCC) (THK), 2007 WL 747796, at *7 (S.D.N.Y. Mar. 7, 2007))); *Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 463–64 (W.D.N.Y. 2009), *aff'd*, 392 F. App'x 887 (2d Cir. 2010)

---

[2]    The Second Circuit has held that Section 1981 of the Civil Rights Act of 1866 prevents discrimination "on the basis of alienage." *Anderson v. Conboy*, 156 F.3d 167, 180 (2d Cir. 1998). However, caselaw in this Court has held that Section 1981 does not allow discrimination claims based on United States Citizenship. *Meyenhofer v. Larsen & Toubro Infotech Ltd.*, 503 F. Supp. 3d 39, 50 (S.D.N.Y. 2020). Plaintiff's opposition indicates that he is a United States citizen, and therefore, cannot bring a cognizable claim of discrimination based on citizenship under Section 1981. *See* ECF No. 11 at 13.

(holding that "subjective beliefs, and naked allegations, unsupported by any facts, of a generalized animus" did not support a claim of discrimination based on national origin).

Finally, Plaintiff does not allege disparate treatment, that is, that he was treated less favorably than similarly situated employees outside of his protected class. Plaintiff makes no allegations regarding a potential comparator. Thus, Plaintiff has failed to allege the fourth element of his Title VII claim.

Therefore, even construing Plaintiff's *pro se* complaint liberally, as required, Plaintiff fails to allege his termination was discriminatory, or that Defendant is legally obligated to provide Plaintiff back pay. Accordingly, the Court grants Defendant's Motion to Dismiss Plaintiff's complaint.

## II.    The Court Grants Plaintiff Leave to File an Amended Complaint

"[L]eave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Walker v. Kosann*, No. 23-CV-04409 (JPC) (JW), 2024 WL 922642, at *8 (S.D.N.Y. Feb. 16, 2024) (internal citation omitted), *report and recommendation adopted*, No. 23-CV-4409 (JPC) (JW), 2024 WL 923314 (S.D.N.Y. Mar. 4, 2024). The Second Circuit interprets Rule 15 of the Federal Rules of Civil Procedure liberally, "consistent with [its] strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks and citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). But "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue

11

prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

Here, Plaintiff was not previously provided notice of the deficiencies in his Complaint, and he has not been given an opportunity to correct these deficiencies. Specifically, Plaintiff may be able to allege additional facts to demonstrate that he is a member of a protected class and that the circumstances of his termination give rise to an inference of discrimination. Accordingly, the Court grants Plaintiff leave to amend his Complaint and ORDERS that Plaintiff file an amended complaint by March 27, 2026.

### III.    The Court Files a Public, Redacted Version of Plaintiff's Opposition

Without seeking or obtaining the Court's leave to seal, Plaintiff filed his Opposition to Defendant's Motion to Dismiss under seal. ECF No. 11. Plaintiff attached his SSA paperwork and Walmart exit interview to his opposition. ECF No. 11 at 6–21. These attachments contain Plaintiff's personally identifying information, including his Social Security number and date or birth. *See* ECF No. 11 at 6, 8, 10, 13. Rule 5.2(a) of the Federal Rules of Civil Procedure provides that

> [u]nless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, . . . a party or nonparty making the filing may include only:
> > (1) the last four digits of the social-security number and taxpayer-identification number;
> > (2) the year of the individual's birth[.]

The Court's Individual Rule in Civil Cases 5(c) provides that, except for certain permitted redactions, including those contained in Federal Rule of Civil Procedure 5.2(a), "*all redactions or sealing of public court filings require Court approval*." This Rule exists because "[t]he common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). "The presumption of

12

access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

Therefore, accompanying this Order, the Court has filed public copies of Plaintiff's opposition papers, with redactions to the first five digits of his Social Security number and his month and day of birth.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. However, Plaintiff is granted leave to amend his complaint by **March 27, 2026**.

Additionally, in an accompanying Order, the Court refers this case to the District's Mediation Program.

The Clerk of Court is directed to terminate ECF No. 8.

Dated: February 26, 2026
       White Plains, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge